And can we call our 2 o'clock case, please? All right, well, Counsel on Sanders, please approach. And please tell us who you are, who you represent, and how much time you'd like. Good afternoon, Judge. My candidate, I represent the economy of Los Angeles. I would like, well, we would like to split the time with the city, and we'd appreciate it if there was at least 20 minutes of affirmative. So, 10 minutes? 10 minutes each, and then we can talk about that 10 minutes as we go along. Okay. Good morning, or afternoon, Your Honors. Paulette Petretti on behalf of the City of Chicago Heights, and I'm in agreement that we would like to have 10 minutes on behalf of the FBI. All right. And? Chris Wadley on behalf of the Illinois Union. If I did my math, it sounds like they want a total of 30 minutes. Well, a total of 20 minutes. They get rebuttal. They get 20 minutes and 10 minutes for rebuttal. Oh, yeah, okay, right, right. So, we get 20 minutes. And I'm going to try to take the labor more on behalf of both the carriers. Okay, so you're really similarly situated. Yeah, I mean, I would like to reserve 3 minutes for Mr. Allen in case you want to say something specifically on behalf of STAR, but my intent will hopefully be to cover everything. I'm guessing, Mr. Allen, we won't need to hear from you, but I won't preclude you from making any points if you want to. All right. With that, we can proceed whenever you're ready. Thank you. I'm pleased to court my candidates for the appellant, Rodel Sanders. Your Honors, an insurance company that wants to sell malicious prosecution coverage in Illinois has to write its policy to pick one of three triggers of coverage. One possible trigger of coverage is an injury trigger. If the insurer writes its policy for an injury trigger, then the policy will provide coverage in the year that the prosecuted person is convicted. If the person is first injured in Illinois, that's understood to be the year where the arrest or the charges take place. The second option that the insurer has is to write a policy that is triggered based upon the time when the insured commits a misconduct. That's a wrongful act trigger, and if the insurer writes such a policy, then coverage will apply in the year when the insured commits the misconduct. That could be coercing a witness. It could be fabricating evidence, and that can predate, oftentimes by years, the eventual arrest and charges. So that's a different year where coverage can arise. Well, but it's malicious prosecution. Yes, Your Honor. So without a prosecute, when you say it can proceed by years, charging the accused, I don't understand that. The event that is the trigger, so the policy year that covers, could be a policy year that predates the prosecution if it's saying we cover based upon the commission of a wrongful act. In year one, they could coerce a witness. In year two, the prosecutor could use that evidence to initiate charges. If they pick the wrongful act trigger, it's the year one policy that governs. And then the third trigger is an accrual trigger. And if the insurer writes a policy for an accrual trigger, then it will provide insurance in the year when the charges are dismissed in a manner indicative of innocence. And the Illinois Union policy, unlike certain other policies, provides, it uses language that it triggers in the year of the offense. And some policies make very clear which trigger they're picking. For example, in cases like City of Zion, they say specifically the year of the injury. Or in a case like Indian Harbor, it says specifically the year of the wrongful act. Offense is a capacious... What would you say, since you're going through the cases that were cited, why don't you go through the other major cases that were... One of the things you argue is that this is different than the cases that have proceeded and the appellate courts have ruled on. This language? This language, yes. You're saying this is unique, you're putting it in a third category. So what I wanted to do is just go through the other two major cases that have been cited by the parties and where would you put them versus injury, wrongful act, or cruel? Fair enough. So I think there's essentially five. Five, whatever's in here. So City of Zion... You put that in injury. It clearly says injury. Indian Harbor clearly says wrongful act. The St. Paul case also clearly, basically uses the same language as the City of Zion case. It's when the injury occurs. And then that leaves you with Bush-Mercury and County of McLean. Like the policy that is before you in which requires interpretation, they use the term offense. And offense is a capacious word. It is ambiguous unless it can be given definition by the words that surround it. And so the courts in those two cases looked at the words that those insurers had written to surround the word offense. So for example, both of them had a definition of personal injury that defined personal injury as injury caused by the offense of malicious prosecution. And both courts were able to look at that definition of personal injury and say, ah, offense has a positive effect on the injury. That tells me something about offense. That means that offense is being used in the sense of an action. Because the approval of a cause of action doesn't cause injury. It's the offense of conduct that causes injury. So both cases had a policy that had personal injury defined as injury caused by. The definition of personal injury that Illinois Union uses skips over the injury requirement entirely and literally defines personal injury as the offense of malicious prosecution itself. And malicious prosecution has five elements and one of them is the case has been terminated in favor of the defendant, which you can't know until the end of all of the trials and appeals and everything else that's happened. Exactly. I have a different question. Illinois Union policy also talks about when the damages and claim expenses for which you become legally obligated to pay exceed the retained limit, you'll be entitled to indemnification by us. When you become, that seems to me, not something that's way in the past, 12 years ago, 22 years ago, that seems to me like, oh, when there's a judgment. The judgment is something that's in the present. The language in that also talks about the interest awarded in a claim. That's also a present situation. It also talks about indemnifying for which insured becomes legally obligated. It's also in the present. The STAR policy is similarly exactly the same as the net loss in a judgment. The judgment can't be until after there's a claim for malicious prosecution. So, if you read the policy as a whole, you're reading something that says, oh yeah, we're going to pay up if there's a judgment and if there's interest, but we can't know that until there is a judgment and or interest. I agree with the court that the language you're identifying is the trigger of when indemnification is due. And it's important additional language surrounding when they use the word offense to give us some limitation on it, some understanding of what the intent of using the word offense is. We know offense can mean two different things. It can mean bad conduct or it could mean the accrual of the tort. There's additional language in the actual insuring clause that I would point to also. Not only do we have a definition of personal injury that is defined as the offense itself, as opposed to injury caused by the offense. We also have the verb that is used about what the current has to do. Interestingly, in the first Mercury case, they were able to rely on the verb in the insuring language committed. And in addition to the injury requirement, personal injury, committed also suggests an action. An accrued tort doesn't commit a violation. Commission suggests action. That's not the language that the Illinois Union used. Commission is a transitive verb. I know this because I was working on grammar with my sixth grader. A transitive verb that has a direct object, but it's specific and not ambiguous. They used the intransitive verb happening. And I brought Webster's Dictionary. And we were trying to understand what happening means. It's a legitimate source. I'm reading from Webster's New Universal Unabridged Dictionary. And the gist of happening does not have an intent element to it. It doesn't have an action element to it. It's a coming into being. Webster's defines happen as to come to pass in the natural order of things. To take place, to occur, or befall, as death happens to all of us. To occur or befall by chance, without plan, to come unexpectedly. It is not talking about an action. That language would be a misfit for action. It is a very good fit for the accrual, final accrual report of the final dismissal of the charges in a manner indicative of innocence. And happen doesn't necessarily include some reference to the past. It's something that is... That's right. There's no reference to the past at all. Actually, anybody who lived through the 70s knows what happened. So do you agree that First Mercury was correctly decided? I... Do we have to address that at all? I think it was correctly decided. It had a different policy language in it. And so it was confronted with the same offense. It had to decide, is this term ambiguous? And it said, well, I'm going to look at the two words that sandwiched between personal injury and committed. And from that, I get a sense of what they mean. That they're talking about offense as action, not offense as accrual. Here, Illinois Union didn't give us that information. I would suggest that by defining personal injury as the thing itself, as the tort itself, it has given us an indication that it was an accrual trigger. But worst case scenario, it didn't give us language that allows you, as the court, to decide which sense of offense was intended. And if they haven't... Every prosecution that ends in an acquittal is not malicious, correct? Correct. So when do you determine whether a prosecution is malicious? You would... There'd be no reason to determine it until after the prosecution is terminated. When does a court, somebody looking at a prosecution, say, who are we looking at and when to determine whether the prosecution was malicious? Malicious is, I think, a shorthand for a lack of probable cause in bringing the charges. A court should look at that at the outset. There's a probable cause hearing. However, if the prosecution and the police are not telling the truth or the whole truth to the court, the court is only saying a part of the picture. Of course, that's right. So the court may have made a perfectly understandable decision about probable cause, but only had part of the facts. Absolutely. And so it's in the later tort suit that malice slash lack of probable cause gets examined in the full... with the context of the full record. Right, but it's determined that the...  We don't look at the mindset of the prosecutor or the police two years after the case is... after the defendant is charged. It's at the time he's charged. If that's what the allegation is, there was a lack of probable cause for these charges, you look at it at the time it was charged, right? You wouldn't look behind the affidavit from the police officer and say, here's the things that happened. If there is a later claim for malicious prosecution, the relevant time period for examining whether the prosecution was malicious was when it was filed. I would say yes in part. It is... The tort of malicious prosecution can be committed by bringing or continuing a malicious prosecution. And there are certainly cases out there where a police officer knows very little. And, of course, the analysis for probable cause is the totality of the circumstances based on what's in the police officer's head. The police officer might know little. And when we do the balance, we have probable cause based on the little the police officer knows. But then continuing the investigation, they learn a lot more. And probable cause can be lost down the road. Right. And so it's at that point... What I'm getting at is you don't look at the end of the case and the accrual of the tort to see if there's malice then. You look at somewhere along the continuum of this prosecution, there's malice because either probable cause didn't exist at the outset or it disappeared during the pendency of the prosecution. Right? If you're going to bring a tort action, you bring it after the case is terminated and you do, in the context of that lawsuit, examine whether there was probable cause at the time or lost somewhere along the way. Right. This all started because the defendant filed a post-conviction petition petition which went to a third state evidentiary hearing in which the trial court said, yep, you're right. He shouldn't have been prosecuted. The witnesses were unreliable. And they faked the case. And that case was appealed. The state appealed it. And our appellate court said, yep, the trial court was right. He shouldn't have been convicted. Right. And he shouldn't have been tried because the witnesses were unreliable. So no one could possibly know that until some judgment is made later about whether he's exonerated, about whether the case is terminated in his favor. You can't look at it from the beginning. You have to look at it from the end. I would say absolutely. And I would add to that that the criminal defendant is disallowed from challenging. Once there's the initial probable cause hearing, they're disallowed from challenging probable cause. They have to go to trial. And they have to challenge whether the evidence is sufficient to establish guilt beyond a reasonable doubt. They literally couldn't come into another court and say, I challenge the legitimacy of this prosecution. Okay, but it gets worse because their motion to dismiss was based on 2-6-19 in which they say, yep, all the facts are right. We're just saying, we have a legal defense. So they can't say at any point now, oh, wait, he should have been prosecuted. That quote has failed. It's gone. There's no way they can say that. So the only thing they can say now is, oh, we have a legal defense of this. And their legal defense of this is based on these other cases in which the language of the policy itself is substantially different. Yes. And they're making a twisted, starry, decisive argument to ask you not to look at the language of their own policy and to simply take the word offense in the context of different policies in those other cases and make it stick here. But I think that what Justice Mason is saying is correct. You're talking about parole. Parole. Parole. Parole. And she said, well, that happened at the beginning in the first act. I apologize. I did not appreciate that, Your Honor. Is that what you're saying? I'm just saying. I don't think I got an answer to your question. We all agree that an acquittal or a not-guilty verdict does not equal malicious prosecution. Okay? So defendants are acquitted every day for reasons unrelated to misconduct. Yes. And so if after the acquittal the defendant alleges that the prosecution was malicious, a court looking at that claim is going to look at what the police knew at the time the defendant was charged. And that state of mind then or at some point when probable cause disappeared because they learned that a witness was lying, but it wouldn't be at the end of the case. You have to have the case over before you get to the accrual or the cause of action. I understand that. But the relevant state of mind is historic. I agree with that, Judge. The relevant state of mind for whether the police officer is maliciously prosecuted is historic. But no court is really allowed to look into what their state of mind is until it accrues. Of course. But after the 2012 ruling by the appellate court in which this court, our colleagues, well-respected colleagues, Justice Sloan and now Supreme Court Justice Seville said, hey, your witnesses weren't very credible, the state brought two new actions in 2013 and 2014. So they did it again. Yes, they did. And there's no question that that was during the policy period. Yes, absolutely. There's no question that the first acquittal or the vacating of his original conviction was during a policy period. Yes. But there's no question that the beginning of the next two trials were during policy. All three of those events are while Illinois Union is on risk. Right. Yes. And our court said those witnesses aren't very credible to the state. In reversing the conviction, it said. And outlined why they weren't credible. And then once Mr. Sanders is allowed to bring a tort suit, once it does accrue, he gets a lot more evidence. And, you know, that blows away the idea. Well, plus they used a different theory in the second two trials. They did switch. So they switched theories. Yes. So, you know, our contention is the accrual rule for this policy, or the trigger rule for this policy is the accrual.    injury or wrongful act, then yes, he's injured in both of those trials. Right. So, you know, if he's injured in both of those trials, while Illinois Union is clearly on risk. I do want to make the point that what we have here is the use by Illinois Union who can draft its own policy the way it chooses of an ambiguous term that only becomes unambiguous in relation to the words     is a matter of stare decisis surrounded that word with the words that are surrounding it. And so, I don't know if that's true. I don't know if that's true. It's a word offense with very different words than what Illinois Union has surrounded its word with. And it's roughly the equivalent if you were to say to, if a judge were to say to a jury, you know, you can award damages for the sorrow that a family suffers when it loses a loved one. It's roughly the equivalent of saying sorrow means the exact same thing as a matter of stare decisis when Juliet says to Romeo goodnight, goodnight, parting and such sweet sorrow. It doesn't. Same word, but you have to look at the words that are surrounded it to understand the intent. Our position is when you look at the words that Illinois Union used to surround offense, the intent to use the cruel trigger is clear. But if you don't find it clear, the big problem for Illinois Union is it doesn't have the wording that First Mercury had so it fails to make clear what the intent of offense is. And when it fails to make that clear, it's ambiguous and you have to construe the policy in favor of coverage. If there's no more questions, I'd like to reserve the rest of my time for a vote. All right. Mr. Petretti? May I please call out Petretti on behalf of the City of Chicago Heights. You know, honors, the City of Chicago Heights has been cut off right at the inception of this case. And under coverage law, you look at whether there's potential coverage. And as we've argued, we think there's coverage not only because of the malicious prosecution and the clear and simple language in the policy that covers an occurrence that happens during the policy period. And the occurrence is defined as specified personal injury offenses. Using the word offenses is a term that delineates false arrest, false imprisonment and malicious prosecution. All of these specified offenses are clear common law torts with clear elements that have to be satisfied. And in the case of malicious prosecution, as has been discussed here earlier, there are elements, the last requirement of which is favorable termination in favor of the accused. And in looking at the history of the coverage cases and wrongful conviction cases and cases where malicious prosecution is the issue, in Illinois, I think it's very important that you go back and look at security mutual, even though all the Illinois courts have said it was overturned by the Supreme Court. It's important to say it was overturned on the issue of arbitrability and it was not overturned on the merits. That case has been cited by cases throughout the country as a seminal case on malicious prosecution and what triggers  And you're talking about who's citing what. It's certainly not the majority view. No, Your Honor. Absolutely. And what has come to pass now in over the evolution of these cases, which I would really say is probably the last 10 to 15 years when wrongful conviction has really become an issue because of the DNA. So you're seeing more of these wrongful conditions and insurers don't want to pay the kind of money that they have to in these cases. So there has now been a split that is referred to as a majority rule, which is where the malicious prosecution is triggered by when the injury occurs, when the wrongful acts occur. And on the opposite spectrum is the minority view when the malicious prosecution is triggered by the complete tort of malicious prosecution. And all of them depend on the language of the particular policy. There can't be a one-size-fits-all because every policy has different language, right? Specifically. And that is what we're talking about today. The other policies are really distinguishable from the policies in all of the other Illinois cases, starting with the city of Zion. That was a St. Paul policy where it was specifically the occurrence was at the time the injury happened, it was... Your Honor, do you have a question? So that was completely different. This case does not talk about injury. This policy has nothing to do with injury or that kind of policy. Has there been any case around the country that you found had language like Illinois Union? Well, American Safety versus the city of Waukegan. American Safety is the Seventh Circuit case that talked about the complete tort. And so that... And there's a series of Seventh Circuit cases. There's Northfield versus the city of Waukegan. McFatridge versus... I'm not sure exactly what the other party, but McFatridge, Northfield, American Safety are all Seventh Circuit cases. And all of them, at the time, they were before all of them were Northfield cases. But they are cited to security mutual with respect. Other than those cases, are there anything else? Yes, there are a few. Out of Louisiana, there's something of that nature. There is... I think there's a case out of Louisiana. There's a case out of Mississippi that was quite recent, I think, on the district court case. So there are cases, but so much depends on the language of the case. I have to say, the Illinois Union case policy language is very different from most of these other policies because it doesn't even talk about the injury. It doesn't talk about wrongful acts. It goes to the pure, unvarnished personal injury is one of the specified following offenses. And really, I think it's going to boil down to the court looking at what does offense mean in this case. Is offense tantamount to a tort? And we cited the Black's Law Dictionary, which we say is the go-to source for legal definitions. And that defines offense as a wrongful act similar to a common law tort. And it's interesting because in First Mercury, they don't even mention blacks. They go to Merriam-Western and talk about a colloquial definition of offense. And in looking at the First Mercury policy language, it is different than the policy language here because it leads in with a phrase that says, personal injury caused by an offense arising out of your business. That's sort of a preamble in First Mercury. And it could lend itself more to a colloquial version because it's talking about personal injury caused by an offense arising out of your business. So I understand why First Mercury came down the way it did, and I think it's different than our case. And I think that this court does not have to adhere to this doctrine of stare decisis because you don't have to follow the Supreme Court decision, you don't have to follow, and I think all this court really has to do is look at the language of the policy itself and say, this language clearly, with the specified offenses that are laid out, has to cover the complete tort of malicious prosecution. Let me re-read the coverage. It would be written if it has the word occurrence, and it finds occurrence as an offensive specified in personal injury, and that is malicious prosecution. So let me re-read what we're talking about, and it says, a person becomes legally obligated to pay because of a claim first arising out of a malicious prosecution happening during the policy period. So, that's different than any other policy. So, heretofore, Eleanor Quartz has discussed and has seen. Yes, it is different, because it's specifying that they... So, to me, the key word in all of this is happening, which is what Professor was saying. Yes. Happening and happening is the key word, which is different from the other cases. It is, and it also, if you go a little farther, it says that it has to take place, the personal entry has to take place during the policy period, and that also is different. That brings it down to the specific time at which the tort is complete. It doesn't... You can't have malicious prosecution. It will not take place until that final element is satisfied. And that goes back to 1978's Illinois Supreme Court case that listed the five elements of malicious prosecution and included the termination of the proceeding in favor of the plaintiff, in this case, the defendant in the criminal trial. So, if the tort isn't complete without those five elements, then you cannot have a malicious prosecution happening until all five of those elements are present and they all happen during the terms of these policies. Absolutely. And from the insured's perspective, too, you buy a policy and it says that it covers malicious prosecution. And you look at the plain and ordinary meaning of that and you say, we're buying a policy that's going to cover it. If we get a claim of  prosecution, we twist the words around and try to imbue meaning that it's not there, which is what I think the insurers are doing in this case, saying, yeah, let's go to Mary Woodster and use that colloquial definition. That's not One of the things about the Illinois Union policy is that it has direction in there. Chapter, I'm sorry, paragraph 12 of the conditions talks about how you are to interpret the policies. And it says that this is a commercial contract and you should interpret it with the meaning that what you would expect in a commercial contract. So how does your interpretation of a malicious prosecution   have to have the final resolution in favor of the wrongfully prosecuted defendant? Yes. How does that get you caught? Well, it gets you caught because it doesn't have coverage for anything other than the dismissal of the charges finally. Because under Meaning, how does that implicate anything other than the 2014 policy? The Tech versus Humphrey, which is a U.S. Supreme Court case, addresses that specific issue on damages. It talks about why malicious prosecution takes into account all the damages before that. And it contrasts because it goes back in time. Once you have this, it will cover everything that happened during that period. And it contrasts that with a false arrest claim, which the Supreme Court dealt with that from a statute of limitations issue that you have to bring a false arrest claim within two years. And they say that you have the time from which he was arrested until the time he was let go. You have a limited period of time for damages. Whereas malicious prosecution, once that is determined, it goes back and covers the whole water. And that is the U.S. Supreme Court. That's what the judgment that Mr. Sanders obtained for the entirety of his damages. But that's different than saying, if I understand your argument correctly, you're saying you're focusing on the malicious prosecution, the offense, must take place during the policy period. Meaning the defendant must be acquitted, must be exonerated during the policy period. So that gets you one policy period, right? The last exoneration period. It doesn't get you, we're not talking about multiple prosecutions here. That's a different theory. That is a different theory. I mean, if what you're saying is it's the final act necessary to allow this defendant to start the statute of limitations running for a malicious prosecution claim, the initial reversal, the hung jury, none of that matters because those aren't final exonerations. For the purpose of trigger? Right. Yeah. For the purpose of trigger, yeah, we're looking at, for malicious prosecution, if we're saying that that is the trigger under this policy, it would be that policy period when the exoneration occurred. The crime happened in 1993. He was vacated in January of 2011. Is that right? Yes. Both policies were in effect in January of 2011. Both companies had policies with the cities that started in November of 2010. Yes. So, if malicious prosecution includes these five elements and they include prosecuting this guy, malice, having a child, all of the damages that he suffers, all of it has to be part of the package of malicious prosecution. It's not just enough to say, oh, it was vacated or he was found not guilty and you get one day worth of damages for the time you spent at the trial that that happened or 20 days at the time that trial happened. It includes the whole package that started at the beginning. You have to look from the beginning to find out whether or not the prosecution was malicious and once there's a finding that the prosecution was malicious, once there's a finding that he's not guilty or the case is vacated, then you have all of the elements you need for malicious prosecution if you have malice as well. And so, the appellate court has already said the witnesses weren't very credible. So, no matter what else happened, the second two cases, the 2013 and the 2014 cases, I think, were very dubious and clearly covered by the policy. But even the 1993 case, which was not vacated until 2011, has to count because you take the whole thing as a package. It's a package deal. You need all five elements and you can't parse out one little piece of it and say, oh, well, they got things for that piece of it. It's the whole thing. Yes. I think that's exactly what the federal court found when they settled, the city agreed to the settlement for $15 million. Right. I think that kind of goes along with the Heck v. Humphrey ruling, too, that the images extend back in time once you have all the elements of malicious prosecution. So, we are, our position is that, you know, even though there are cases that hold otherwise, both, depending on the policy language, you can have a majority view, you can have your first mercury, but we can also have Illinois Union that finds that the trigger is on the day of exoneration. We believe that the two doctrines can coexist harmoniously. There's no Illinois Supreme Court case that follows the logic of Illinois Union insurance or Star insurance. No, there is no Supreme Court case. There's nothing since 1978 that says what the five elements are. Right. And that was in the appellate court. So, in Illinois now, we have five, but you have dozens of cases that say you have to read the specific language of the specific contract case by case. There's no black letter law here. Precisely. So, if there are no further questions, thank you, Your Honor. Thank you. All right, Mr. Wadley? Thank you. May it please the Court, Christopher Wadley on behalf of Illinois Union Insurance Company. The issue in this case, Your Honors, is straightforward. The question is when does the offense of malicious prosecution take place for purposes of triggering coverage under the insurance policy? And I think to answer that question to tell you a little bit more, I want to touch upon something that Justice Mason was in some of your questions was what is it about a prosecution that makes it malicious? What makes a prosecution offensive? What makes it an offense? It's not the exoneration that makes a prosecution malicious or offensive or an offense. It's the institution of charges against a defendant without probable cause. And that is the offense. That is where the injury occurs. That is where the wrongful conduct occurs. The exoneration part is, yes, it's a precondition to liability that's imposed by the courts. But the exoneration itself is not the fault of the criminal defendant. And that charges are maliciously instituted against the defendant based on that fabricated evidence when the police allegedly know that that person has been wrongfully charged. Well, wait a minute. I mean, there are some torts that you can see right away. A car runs into you, breaks your leg, you know your leg's broken. It's a tort. Asbestos cases, raising asbestos years and years and years, you don't get diagnosed until 20 years later. The tort doesn't happen until 20 years later. This is one of those very few backwards torts where you have to get to the end before you can look at the beginning. I don't know that I necessarily agree with that respectfully because, you know, in those cases, you know, there is a span of time between the conduct and the injury. And when you're dealing with those cases on occurrence-based policies, most occurrence-based policies, the conduct and the injury both occur on the same day and that is when the charges are instituted without probable cause. We're in the policy that talks about injury though. It talks about personal injury and with respect to personal injury, it's not separating that from the word injury. You know, you talk about this injury. I don't see that word in this particular definition. No, no, and I was simply addressing Justice Paczynski's point. Part of her point is, you know, you're talking then about injury but that's not this case. No, this case is when does the offense of malicious prosecution take place. And I think in that situation you look at First Mercury which asks what does it mean, what does the word offense mean in the context of malicious prosecution. And in First Mercury the court said that the offense refers to the wrongful conduct that results in the initiation of the charges against the criminal defendant. But here we have the definition of I'm sorry I didn't quite understand the question. Only those offenses, the word offense is talking about the offenses specified in the personal injury definition and that is personal injury means malicious prosecution. So we don't have a problem knowing what offense means in this case as opposed to First Mercury. We didn't have a problem knowing what offense meant in First Mercury either. I mean, offense in First Mercury was defined as, I mean, here's the difference with First Mercury is that in First Mercury the trigger date was the offense being committed during the policy period and in this case it's the offense either happening or taking place during the policy period and the offense taking place or happening during the policy period. I use those two phrases because the way our policy actually works is that both the occurrence and the personal injury have to take place during the policy period. It says the occurrence must happen during the policy period and the personal injury must take place during the policy period. Both of those collapse into the offense of malicious prosecution. And so that's really the distinction that they want the court to make is that we somehow intended a different result in First Mercury because instead of saying that the offense must be committed during the policy period, that the offense must happen or take place during the policy period, we would submit that as a distinction without a difference. And I guess... Let's say, for purposes of my question, except everything you said. Okay. Here's my question. Give me language of a policy that would pass muster. That is, what language would have been needed in order for this policy to cover this case? What... I mean, everything you say, I want to know what would have. What would have? I'll give you a specific example that I've confronted. I mean, it's not in the record, but I know that... No, I'm just asking what... They could have a policy that would say, we cover liability for malicious prosecution, but only if, A, the charges are, or the conviction is vacated during the policy period, the charges are dismissed during the policy period. So, you know, there's not... How does that differ from what we hear? Because that specifically talks... The trigger on that is specifically when the charges are dismissed, when there's an exoneration. Here, we're talking about when does the offense occur, which, if you look at the case law, if you look at First Mercury and you look at the cases that it cites, it says when we talk about the offense, we're referring to the bad acts. We're referring to the offensive conduct that has resulted in this malicious prosecution. The exoneration is not part of the offense in the popular understanding of the word offense. Well, but it is one of the elements of the tort. It is, but the Illinois discourse has... You can't raise the tort, you can't raise the basics on the basis of the tort until you actually have all five of the elements, and this is one of the essential elements. It is. So, in 1994, when he's in jail, in prison, he can't say, oh, malicious prosecution, because there's nothing that demonstrates it. There's no termination of the case in his favor. Right, but he... So, it would be an insurance policy that didn't insure anything. Is that possible? Well, no. I don't think that's correct at all, Your Honor. I believe that the second that Mr. Sanders was maliciously prosecuted, the second that he was charged based on false evidence... Which you're not denying, by the way. Well, we have to make it as true for purposes of this case. You know, the offense happened. The offense happened. The wrongful conduct occurred then. Now, the law says you can't sue until you've been exonerated, and there are practical reasons for that. I mean, number one, if you sue before you've been exonerated, you're going to have a collateral  and that's a stoppable problem, because you're bound by the jury's determination in the first instance, and secondly, I think as a practical consideration, courts don't want every person who's been convicted of a crime to file a malicious prosecution action. There has to be some exoneration first as a precondition, but that doesn't make the exoneration the offense of malicious prosecution. If the Illinois Union wrote this policy for the 93-94 policy period, it would be on the hook, right? Yes, and in fact, the city did have coverage, and this is in the record, they did have coverage under United National policy, and United National paid its policy limit towards satisfaction of the $15 million consent judgment that was entered. They want coverage under both the policy in effect when the malicious prosecution was instituted. But both policies have different language. Well, we don't know because the United National policy is not in the record on the motion to submit, so that's not in front of us. But, you know, the point being is that in order for this court not to follow First Mercury, you have to reach the conclusion that defining the triggering event as the offense taking place during the policy period means something completely different than the offense being committed during the policy period, and on that point, I do want to go back to county of McLean, because county of McLean actually didn't have the committed language in there. County of McLean, the policy said that the we only  resulting from an occurrence during the policy period. Occurrence was defined as the offenses listed in the definition of personal injury, and personal injury is one of the offenses. And I just want to read from the court's opinion there. The court's opinion in county of McLean, and this is paragraph 32, states, plaintiffs argue that because Beeman's malicious prosecution claim was not fully ripe for adjudication until the criminal proceedings against him were terminated, the malicious prosecution took place in quotes when the state dismissed the charges against Beeman. This interpretation is contrary to the plain language of the policy. So in county of McLean, they were addressing, the court used that phrase, when does the offense take place? And they said the offense does not take place when exoneration happens, because that's the final element of the case. That it happens when the wrongful conduct leads to the initiation of charges against the claimant without probable cause. But you have security mutual at the appellate court found that the timing was right at the end of the termination of the, against the defendant. And the Supreme Court didn't say, oh no, appellate court, you're wrong about that, we're changing that. They did it for another reason. So there were some other reasons. So as far as we can tell, those five elements and that timing are still with law. I mean, there's no question that the five elements for a malicious prosecution claim are the same. That you cannot bring a malicious prosecution claim until you've been exonerated. The problem with security mutual was that the court, you won't even find the insurance policy language in that opinion. Where the security mutual court went wrong, which has been pointed out by this court in City of Zion and subsequent cases, is that they conflated the trigger date for purposes of an insurance policy with the elements of the underlying cause of action. Okay. So that would be a really safe bet then for insurance companies to get the premiums for malicious prosecution in a state where the average criminal trial takes, what, a year, two years, three years, appeals take a year, two years, three years, and probably, I don't want to say none of them would ever be during the policy period, but I'd say a very, very small number of them that were actually ripe for the tort of malicious prosecution would ever be during the policy period because policy periods are generally one year. So if you've got a criminal case that's going to take, say, a year, two    you're going to have to pay up. Great. But you never have to pay up. Well, no, not, I mean, if you're the insurer on the risk when the malicious prosecution is instituted, then you don't have that defense. You have to cover that. And, I mean, actually what the courts have pointed out is that the problem with a delayed trigger date, to say that it's the exoneration and not the malicious prosecution, that's the trigger date, is that that's actually where you can have problems either from the insurance company or from the insured. Well, sure. Because you can have a situation where the insured knows that they've maliciously prosecuted somebody, and they can see that, oh, this exoneration is coming down the pipe, and so they run out, they can run out and get an insurance policy, but, you know, the day before exoneration... But you write the policy. You have the ability to say in that policy, oh, we'll cover malicious prosecution except under these circumstances. When the prosecution started a year before, two years before, write your own exemptions. You write the policy. So if it's just a blanket policy that says we're going to cover malicious prosecution, that's your choice. The city's not negotiating that language. You're putting it in there. You have the power. That's true. You didn't want to take the risk that 20 years ago that some cop screwed up or some prosecutor screwed up or the city screwed up. You didn't want to take that risk and you just don't cover malicious prosecution. You could, but, I mean, you could. On the other side of the coin, though, is look at it from the insurance company's standpoint. Say you issue a series of policies to an insured that cover the offense of malicious prosecution and you're on the risk at the time the malicious prosecution is instituted and you stay on the risk throughout all of the appeals and all of the litigation is going to get reversed, so you drop them. So you drop your insured at that point, you stop writing the policies, and then the next day the person is exonerated. So you're telling me in that situation that under this language the carrier could escape. They could see this. We were on the risk when we maliciously prosecuted this guy, but we can hang on to this, but we can drop him the week before he's exonerated. Insurance companies take risk. They have reserves. They get premiums. They write the policies. All of that is in your combinations and permutations. All your bean counters know how to do that. If you didn't want to take the risk that the city of Chicago Heights, which has been in business for I don't know, 8500 years, somewhere down the line, and maliciously prosecuted some guy, then you either write some exceptions in the malicious prosecution section or you don't cover it. But you write the policy. You make that choice. And you take the premiums for it. And you take the risk for  What our client assumed in this case was the risk that an offensive, malicious prosecution would take place during the policy period. And again, this all goes back to what does it mean for the offensive, malicious prosecution to take place. And we think as the majority of courts have concluded, as the majority of     should be prosecuted in the same way. And the difference I see between that case and our case is there the policy language was personal injury means injury caused by one word. We don't have the word caused here. We have the word happening. So to me, our case goes down to how we interpret one word. To me, the word happening is very different than these other policies. You accurately quote the language, but that wasn't the   It was occurring during the policy period. I apologize. I have that here. And so in county of McLean, if you follow it, the first point is that we cover liability for personal injury resulting from an occurrence during the policy period. So the trigger there that you're looking at   happening.  not the offense committed. It's the offense of malicious prosecution. It doesn't say offense committed. It's the offense of malicious prosecution. What happens is our policy. In county of McLean, you didn't have a charge that only takes place. So what I'm suggesting is that for the court to draw the distinction that an offense is committed when the charges are initiated but an offense only takes place or only happens at some point during exoneration, that that's I think that's a meaningful meaningless distinction to make. It's when does the offense occur? That's what we're asking ourselves here. Does the offense occur when the charges are instituted or does it occur when the claimant is exonerated? And if I could, I just want to maybe shift over to the multiple trigger issue because just because there were some comments during the counsel's argument that I just want to talk about briefly is that number one, there was never a new prosecution that was instituted against Mr. Sanders. This was all the same prosecution. What happened was this conviction was vacated based I believe on ineffective assistance of counsel was the basic ground for it. And now of course there were some issues related to the witnesses that had testified against Mr. Sanders, but the appellate court never entered any didn't dismiss the charges against him. That would have been a double jeopardy issue then for them to bring new charges against him. These were always the same charges. It was the same allegedly malicious prosecution from return of the conviction. What about changing the tactics to accountability? Well, I mean, if you look at the pleadings on that, there actually aren't any facts flood that support that. It's a conclusory assertion that they changed theories to an accountability theory. Number one, it's the same charge. Number two, if you actually look at the pleadings, they don't actually support that argument because the whole premise of the malicious prosecution, at least as flood  underlying complaint, was that the police manipulated two witnesses, Jermaine Haslett and Ms. Armstrong, who was the victim, that they manipulated them into identifying Mr. Sanders as quote-unquote offender number three, which was the person who allegedly ordered the shooting. I know they argue that they changed the theory to an accountability theory because he ordered the shooting. Based on what I read in the pleadings, that was always, you know, that was the whole basis for the alleged malicious prosecution was that they manufactured this witness testimony that Mr. Sanders was not the shooter, but the person that had ordered the shootings. But again, even with respect to that, if you look at what the alleged wrongful conduct was in relation to the second and third trials, it was the fact, and this is how it's pled in their complaint, it was the fact that they continued to rely on those, the alleged fabricated or manipulated witness testimony and failed to produce or disclose the exculpatory information from the beginning of the investigation that led to the institution that they were in. And so, I      The other thing that we need to look at is the charges. There is a unique situation, there's actually a Sixth Circuit case that came out a year ago on this, where there could be a situation if you think about it, where the initial institution of the proceedings is completely legitimate, that the police have a legitimate basis to file the charges. It's not malicious at the time it's filed, but say two months later, the police discover some exculpatory evidence that makes them realize that this person is actually innocent, but instead of turning that over, they continue to maintain the prosecution. What's the trigger date then? When does the offense occur? It's not the initiation of the prosecution because it wasn't malicious at that point. In that case, the Sixth Circuit said, well, no, the offense of malicious prosecution in that situation occurs when the prosecution becomes malicious. If it didn't start out malicious, it's when it becomes malicious. But that's not the situation that you have here. The claim against the city was that this prosecution was malicious from the   a crime that was committed a few years ago because they were out to get Mr. Sanders and they manufactured evidence in order to prosecute him for a crime that they knew he did not commit. This is not a situation where you're dealing with where you could have a prosecution that's not malicious, but then there's something that happens during the prosecution that renders it malicious. If you look at the St. Paul v. City of Waukegan case, the court did address this issue because that's a case that involved Juan Rivera and I think four of these cases actually involved the Rivera situation. But he was tried and convicted three times. In that case, it was argued that there was a new triggering event each time they subjected him to a trial and violated his Brady rights by not disclosing exculpatory evidence. And the court rejected that argument and said, no, this is all one malicious prosecution and they're not going to have, it's not a continuing trigger, it's not multiple trigger, it's one single offensive malicious prosecution and that offense occurs on the date that the prosecution initiated maliciously and without probable cause. And so for those reasons, you know, we would ask the court to affirm the circuit court's dismissal of the action. If I have any time left, I'll offer it to Mr. Brandt if he has anything to add. No? Okay. All right. Thank you. Thank you. Just a couple points. On the St. Paul case that was raised, that     effect during the third trial of Juan Rivera. And that was the third trial of Juan Rivera. And that trial was not  multiple trial issue. The court in that case relied on language of Indian Harbor, which was not a multiple trial issue. That was that the Indian Harbor case addressed the trigger on the date of exoneration. So in that St. Paul case, the court did not address the cases that we had raised out of Illinois and the U.S. Supreme Court that say that each trial is a new prosecution. Each trial the slate is wiped clean. So we've raised that again here. It's wiped clean as far as the defendant is concerned because his conviction is vacated or it's reversed and it's sent back for a new trial to start over. But I think Mr. Wadley is correct in that if it was a new trial, there would be a double jeopardy problem. So it has to be the same prosecution from beginning to end. Well, in looking at it from a coverage viewpoint, there was a decision made to start over. And so it does begin a new prosecution. We've raised the cases that are out there in terms of the Supreme Court and the Illinois and the U.S. that say it's as if those former trials never happened from a legal standpoint. So we would just ask if the court is going to make that decision for each new trial. With regard to the policy language, the insurer is in control of that policy language. And in this case, and I think we put it in our brief, the Illinois Union and Star Identity sold policies for a number of years to the city of Chicago and in 2012 American Safety came down and insurers have an obligation to be aware of what the law is, the developing law. And in American Safety it was very clear that if you have a claim for a malicious prosecution, the trigger date would be the completion of that tort. Now, it was not the same policy year. It was clearly, in effect, the policy didn't go into effect until November, the case came down in April. And in reading policies, and I'm sure the court has seen them all, there are endorsements all the time that are added to policies. And I have seen endorsements now since the evolution of these cases. And the state's self-insured indemnity is one of the carriers that was involved in the county of McLean. They won that case. But the next year, the policy that came out had a definition. Is that in the record? What? Is that in the record? What you're just about to tell us? No. Okay. I won't. All right. But what is in the record is that the Illinois Union had capacity to put an endorsement on that policy. Is there a case that says that we're supposed to look at the law at the time the policy is written? Look at the time the policy is written? Is there a case that says to look at the law at the time the  written? You're arguing that we should look at the law at the time they wrote the policy. Or you're not arguing? No, I'm not arguing. I'm just saying that they had the capacity. Because they're issuing the policy. They don't have to. It's irrelevant. I don't see what... Well, the only relevance is that they are stuck with the language that they have in the policy now, which is... We maintain coverless malicious prosecution. Thank you. All right. Mr. Candidates? Let me begin briefly with the citation to County McLean and Justice Hyman's questions about that. Counsel cited you to paragraph 32 of the County McLean case where the court is grappling with the offense. I would ask you to go on and read paragraph 33 and 34 where the court clearly says the definition of occurrence, which could be either the completion of the tort or it could be an activity, is made clear by the definition of personal injury, which means under the McLean policy, injury caused by malicious prosecution. And the ensuring language there, this is just my notes on it, but it is that the triggering language is paying damages because of personal injury that results from an occurrence, an occurrence being the offense. So it was very important to avoid the ambiguity that you all were confronted with for the County of McLean court that personal injury was defined as injury caused by malicious prosecution as opposed to the definition we have here, which is personal injury is the offense of malicious prosecution. I want to respond also to Justice Mason's question to counsel that if the Illinois Union had written its policy for 1993 wouldn't it be paying and counsel of course said yes. And without meaning any disparagement, I would say that that concession is hollow. What has happened here is an insurer has left itself the ability to take either position because they haven't given any definition or language that would for sure say that the term offense means bad conduct versus the term offense means immature court. So you know, my argument was that the interpretation that Illinois Union is advancing is disfavors the insured and favors the insurer. I mean, as Justice Wachinsky pointed out, the insurance company can decide what it will insure. Period. And it charges a premium for that. So it's after the fact to say, well, it's not favorable to us because that policy wasn't in effect at the time the prosecution was instituted is the benefit of hindsight. We're here interpreting a contract. I agree, but I'm suggesting that some of the policy reasons behind why ambiguities are interpreted in favor of the insured apply here because it has left itself room to look with hindsight and say, oh, what I meant was, I meant injury, I meant wrongful conduct, but they didn't put that in their policy. And so that is why when you're left with a policy written by the insurer where they could have chosen language to make themselves clear and they didn't, you don't leave them wiggle room, you construe it in favor of coverage. And, you know, counsel, I think, was arguing that, you know, oh, the insurer would never pick an accrual rule because that's just bad for insurers, but that's not true. There's pluses and minuses to whichever trigger you pick because you're going to end up with unpredictable facts that will land you in one of those policy years. And there are reasons why an insurer would want an accrual rule and use them. If you don't have an accrual rule, then you have to wait decades or longer, potentially, to find out if you're going to have a claim, if you've made a profit, you can't close your books. So for that reason, it makes sense for insurers to pick a trigger that is at least close in time to when they write their policy. They don't have to worry about anything longer than special invitations. Another reason is they have to price their premium. And juries award damages in arguably more significant and harsher ways than juries did 25 years ago or 30 years ago. And so when insurers are trying to price out their premiums, they want to know what a jury is going to be doing close in time to when they write their policy, as opposed to 20 years ago. It's not a claims-made policy, but they can get the benefit of proximity by using the approval trigger and still enjoy other protections like known law school and things like that that they would throw out the window that insurers really like if they did a claims-made policy. Lastly, I did not realize that the United National policy is not in the record and I'm not going to say what it does cover, only to make the point that it is consistent for United Nationals to have a trigger that is different than Illinois Union shows and in that case, and that is a thing that happens in coverage cases where there are multiple policy years involved. It's an exercise in how obtuse you can make the English language. Between 1993 and today, every policy is different. For sure. And so, they actually include language on how they're going to share in case the different policy years are all triggered simultaneously. That's all I have  Thank you for your very interesting and your excellent briefs. We will take the case under advisement.